**Frederick J. BADGER, Jr.**

v.

**Diane LINSCOTT, et al.**

Supreme Judicial Court of Maine.

Submitted on briefs March 2, 1993.

Decided March 29, 1993.

Nicholas Bull, Mark G. Furey, Thompson, McNaboe, Ashley & Bull, Portland, for plaintiff.

Nathan Dane, III, Lewis Vafiades, Vafiades, Brountas & Kominsky, Bangor, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

CLIFFORD, Justice.

Defendant Diane Linscott appeals from an order of the Superior Court (Penobscot County, *MacInnes, A.R.J.*) denying her application to order arbitration. Because we agree with Linscott's contention that the partnership agreement underlying the dispute between these parties requires arbitration, we vacate the Superior Court's order.

In 1980, Frederick J. Badger, Jr., Willard H. Linscott and Orman G. Twitchell formed

a partnership, known as 82 Columbia Street, for the purpose of acquiring and managing certain commercial real estate in Bangor. The partners executed a written agreement setting forth their mutual rights in and obligations to the partnership.[1] Among other things, the agreement specifies the effect on the partnership and the procedures to be followed when a partner dies, is expelled, or withdraws. It further provides that all disputes arising out of the agreement shall be resolved through arbitration.

In 1986, Twitchell received a letter notifying him of his expulsion from the partnership. Twitchell contested the expulsion, and the matter is still unresolved. In 1988, Willard Linscott died. In accordance with provisions of the partnership agreement, Diane Linscott, his wife and personal representative, undertook negotiations regarding the partnership's purchase of her late husband's interest in the partnership. No agreement was reached.

In 1991, Badger brought a two-count complaint in the Superior Court against Diane Linscott, Twitchell and Slater.[2] The complaint recites the disputes among the parties and in Count I asks the court to declare the rights of the parties under the partnership agreement. Count II alleges the partnership can only be carried on at a loss and requests a dissolution of the partnership under the Maine Uniform Partnership Act. *See* 31 M.R.S.A. § 312–A(1)(E) (Pamph.1992). In her answer Linscott asserted that the partnership agreement requires all disputes to be resolved through arbitration, and she asked the court to order arbitration pursuant to 14 M.R.S.A. § 5928 (1980).[3] After a hearing, the court denied her request and this appeal followed.[4]

Linscott contends that the court erroneously denied her application because the partnership agreement requires the surviving partners to purchase a deceased partner's share of the partnership and establishes arbitration as the method for resolving any dispute concerning the fair market value of that share.[5] Badger resists Linscott's efforts to seek arbitration, asserting that he has an absolute right to dissolve the partnership, the partnership is not required to purchase Linscott's share, and, therefore, arbitration is unnecessary. We are unpersuaded by that assertion.

We have previously recognized the policy in Maine favoring arbitration and have required parties to submit to arbitration when a contract provides for that method of dispute resolution. *Orthopedic Physical Therapy Center, P.A. v. Sports Therapy Centers, Ltd.*, 621 A.2d 402, 403 (Me.

---

1. The partnership agreement was amended in 1984 to add Brent R. Slater as a partner.

2. Twitchell died later in 1991. Jeanne M. Twitchell, his personal representative, has been substituted as a party in this action.

3. 14 M.R.S.A. § 5928(1) (1980) provides:

 On application of a party showing an agreement [to arbitrate] and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied.

4. Although an order denying an application for arbitration does not constitute a final judgment, it may be appealed under a provision of the Maine Uniform Arbitration Act. *See* 14 M.R.S.A. § 5945(1)(A) (1980).

5. Paragraph 17 of the partnership agreement provides:

 Upon the death of a Partner, the business of the Partnership shall not terminate, but shall be continued by the remaining Partners and the Partnership shall purchase, and the estate of the deceased Partner shall sell to the Partnership, the interest of the deceased Partner in the Partnership. Such interest shall be divided among the remaining Partners, *pro rata*, in proportion to their respective percentage interest. The purchase price for the interest of the deceased Partner in the Partnership shall be the fair market value of the deceased Partner's interest as of the last day of the month following the death of such Partner. Said fair market value shall be determined in the manner set forth in paragraph 15(e) above of this Agreement.

 Paragraph 15(e) provides that when an agreement on fair market value cannot be reached, fair market value "shall be determined by arbitration." It then sets forth a specific arbitration procedure to be followed.

1993). In the present case, the partnership agreement clearly contemplates that the surviving partners will purchase a deceased partner's share, and that disagreement on the fair market value of a partner's share must be resolved through arbitration.

 It is true that the Maine Uniform Partnership Act allows a partner to apply to the court for a decree of dissolution when, as here, it is alleged the business of the partnership can only be carried on at a loss. 31 M.R.S.A. § 312–A(1)(E). This does not mean, however, that the partnership is excused from resolving existing disputes. Pursuant to 31 M.R.S.A. § 309 (1978), dissolution is a "change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business." Section 310 provides that "[o]n dissolution, the partnership is not terminated, but continues until the winding up of partnership affairs is completed." Therefore, even if Badger obtains a dissolution, the partnership will not terminate until the winding up of all of its affairs is completed. In this case, the partnership must account to and pay any amounts due the Linscott estate before the partnership can terminate.[6] Since the parties have been unable to agree on the fair market value of Willard Linscott's share of the partnership, that dispute must be resolved through arbitration.

Badger argues that even if the partnership is required to arbitrate the fair market value of Linscott's interest, the value cannot be determined until the matter of Twitchell's expulsion is resolved. Accordingly, the request for arbitration was premature, and the court properly denied it. This argument overlooks the fact that under paragraph 20 of the partnership agreement, *any* dispute arising out of the agreement is subject to arbitration.[7] Therefore, the disagreement stemming from the letter notifying Twitchell of his expulsion must also be resolved through arbitration.

Since Badger's complaint sought not only a dissolution but also a declaration of the rights of the parties under the partnership agreement, the Superior Court erred when it denied the application to order arbitration.

Other contentions raised by Badger are without merit and require no discussion.

The entry is:

Judgment vacated. Remanded to the Superior Court for entry of an order to compel arbitration.

All concurring.

---

**6.** The death of Willard Linscott worked a dissolution of the partnership as to him even though the remaining partners carried on the business. Linscott's death caused a "change in the relation of the partners," because he obviously could no longer "be associated in the carrying on ... of the business." 31 M.R.S.A. § 309. His estate is a creditor of the partnership. *See* 31 M.R.S.A. § 322 (1978).

**7.** Paragraph 20 of the partnership agreement provides:

In the event of any controversy, dispute or disagreement or claim arising out of or relating to this Agreement, or breach thereof, the matter shall be carried out in accordance with the provisions of the Maine Uniform Arbitration Act; provided, however, and not withstanding the immediately preceding provisions of this paragraph, if the matter submitted to arbitration shall involve the determination of fair market value of the interest of a withdrawing, expelled or deceased Partner, then such arbitration shall be held pursuant to and in accordance with the provisions of paragraph 15(e) above of this Agreement.